```
                IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS (EL PASO)

UNITED STATES OF AMERICA,     .  Case No.: 3:25-MJ-02521-RFC-1
                              .
          Plaintiff,          .
                              .
     vs.                      .
                              .
HILARIO VIGIL-GONZALEZ,       .
                              .
          Defendant.          .  Thursday, May 22, 2025
. . . . . . . . . . . . . . . .  10:02 A.M.
```

**FILED**
June 27, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: ___Belinda Gamez___
DEPUTY

TRANSCRIPT OF PRELIMINARY AND DETENTION HEARING
**BEFORE THE HONORABLE ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE COURT JUDGE**

APPEARANCES:

```
For the Government:    United States Attorney's Office
                       BY: ANDRES ORTEGA, ESQUIRE
                       700 East San Antonio Avenue, Suite 200
                       El Paso, Texas 79901
                       (915) 534-6884
                       andres.ortega@usdoj.gov

For the Defendant:     Office of the Federal Public Defender
                       BY: ERIK ANTHONY HANSHEW, ESQUIRE
                       700 East San Antonio Avenue, D-401
                       El Paso, Texas 79901
                       (915) 534-6525
                       Erik_Hanshew@usdoj.gov

For the Interpreter:   D. Orrantia

Deputy Clerk:          Veronica Montoya
                       United States District Court
                       525 Magoffin Avenue, Suite 105
                       El Paso, Texas 79901

Transcription Service: Liberty Transcripts
                       9107 Topridge Drive
                       Austin, Texas 78750
                       (847) 848-4907
                       DBPATEL1180@GMAIL.COM
```

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

INDEX

|  | Page |
|---|---|
| Case called | 3 |
| Arguments on Probable Cause | |
|   By: Mr. Hanshew | 11 |
|   By: Mr. Ortega | 11 |
| Court's Rulings | 12 |
| Court gives Brady Advisement | 12 |
| End of Proceedings | 12 |
| Certification of Transcriber | 12 |

WITNESSES FOR THE GOVERNMENT:

ALEJANDRO PORTILLO
  Direct Examination by Mr. Ortega    3
  Cross-Examination by Mr. Hanshew    7

WITNESSES FOR THE DEFENDANT:

(None)

                        Identified   Received

EXHIBITS FOR THE GOVERNMENT:

(None)

EXHIBITS FOR THE DEFENDANT:

(None)

1   **EL PASO, TEXAS, THURSDAY, MAY 22, 2025, 10:02 A.M.**

2              COURTROOM DEPUTY:  All rise.

3              THE COURT:  Have a seat, please.

4              We'll call 25-2521, United States of America versus

5   Hilario Vigil-Gonzalez.  Announcements, please.

6              MR. ORTEGA:  Andres Ortega on behalf of the United

7   States.  Ready, Your Honor.

8              MR. HANSHEW:  Good morning, Judge.

9              Erik Hanshew on behalf of Mr. Vigil.  We're ready.

10             THE COURT:  Good morning.

11             MR. ORTEGA:  Your Honor, the Government calls U.S.

12  Border Patrol Agent Alejandro Portillo.

13         ALEJANDRO PORTILLO, GOVERNMENT'S WITNESS, SWORN

14             THE COURT:  Thank you.

15             MR. ORTEGA:  Thank you.

16                       DIRECT EXAMINATION

17  BY MR. ORTEGA:

18  Q    Would you please state your full name?

19  A    Alejandro Portillo.

20  Q    And how are you employed?

21  A    With -- I'm an agent with the U.S. Border Patrol.

22  Q    And how long have you been a U.S. Border Patrol Agent?

23  A    Fifteen years.

24  Q    And what is your current assignment?

25  A    Currently, I'm assigned to the El Paso Sector

1  Prosecutions Unit.
2  Q    Okay.  In your capacity as a U.S. Border Patrol, did you
3  have the opportunity to review the case relating to the most
4  recent arrest of an individual by the name of Hilario
5  Vigil-Gonzalez?
6  A    Yes.
7  Q    And did you examine the case file?
8  A    Yes.
9  Q    And does the case file contain a photograph of
10 Mr. Vigil?
11 A    Yes.
12 Q    And have you examined that photograph?
13 A    Yes.
14 Q    On that basis, can you identify Mr. Vigil?
15 A    Yes.
16 Q    Do you see him in the courtroom today?
17 A    I do.
18 Q    And can you describe where he's seated and an article of
19 clothing that he's wearing?
20 A    He is currently sitting with Defense -- at the Defense
21 table wearing an orange jumpsuit.
22         MR. ORTEGA:  Your Honor, may the record reflect
23 that the witness has identified Mr. Vigil?
24         THE COURT:  Yes, sir.
25 BY MR. ORTEGA:

1   Q   And the events leading to the most recent events or the
2   most recent arrest of Mr. Vigil, did they occur in the
3   Western District of Texas?
4   A   Yes.
5   Q   Okay.  And was Mr. Vigil found in the United States?
6   A   Yes.
7   Q   And when was Mr. Vigil encountered?
8   A   He was encountered on May 14th, 2025.
9   Q   And where was he encountered?
10  A   He was encountered approximately four miles -- four
11  miles east of the Bridge of the Americas Port of Entry.
12  Q   All right.  And who encountered him?
13  A   Border Patrol agents.
14  Q   And were the agents able to determine whether he was an
15  alien to the United States without documents that would allow
16  him to enter into the -- or remain in the United States
17  legally?
18  A   Yes.
19  Q   And were they able to determine his country of origin?
20  A   Yes.  They determined he was a citizen of Honduras.
21  Q   And was that in part based on statements he made to the
22  agents?
23  A   Yes, correct.
24  Q   Was Mr. Vigil then taken into custody?
25  A   Yes.

```
 1  Q    Did agents enter his biographical information and
 2  biometrics into a law enforcement database?
 3  A    Yes.
 4  Q    And on that basis, were they able to confirm his
 5  identity?
 6  A    Yes.
 7  Q    Have you requested Mr. Vigil's A-file?
 8  A    Yes, I have.
 9  Q    Do you have it?
10  A    No, I don't.
11  Q    Okay.  Were you able -- did you review information about
12  his -- from his A-file?  Or in the database?
13  A    Through the database, after running his record checks,
14  it reveled that he was indeed a citizen of Honduras and that
15  he was removed from the U.S. on June 14th, 2023 through
16  Laredo, Texas.
17  Q    Okay.  And do you know what type of removal document
18  that was?
19  A    No.  Removal document, since it was his first removal,
20  it should be a 296, but I wouldn't be able to confirm it
21  until I get the actual A-file in hand.
22  Q    Very good.  All right.  Was there any record of
23  Mr. Vigil having received the express consent of the U.S.
24  Attorney General or the Secretary of Homeland Security to
25  reapply for admission into the United States?
```

```
 1   A    No.
 2              MR. ORTEGA:  Pass the witness, Your Honor.
 3                       CROSS-EXAMINATION
 4   BY MR. HANSHEW:
 5   Q    Good morning, Agent Portillo.
 6   A    Good morning.
 7   Q    Good to see you.
 8   A    Likewise.
 9   Q    So you're the assigned case agent, correct?
10   A    Yes.
11   Q    And you prepared the complaint affidavit?
12   A    Yes.
13   Q    As well as the complaint?
14   A    Yes.
15   Q    But you weren't physically present out in the field on
16   May the 14th when Mr. Vigil was arrested, correct?
17   A    Correct.
18   Q    Who were the -- who was the first law enforcement
19   individual to encounter Mr. Vigil?
20   A    Border Patrol Agent Davalos (phonetic).
21   Q    And just Agent Davalos was the only one that found him?
22   A    No.  The event started by NVSS or camera operator saw
23   the Defendant along with two other subjects, using a ladder
24   to -- to jump over the border wall.  Agent Davalos responded
25   north of that area and found the Defendant in an open lot.
```

1  Q    And I'm sorry?
2  A    In an open lot like in an open area just north of the
3  entry.
4  Q    Okay.  An open lot?
5  A    Yes.  Like an open field, I guess you could say.
6  Q    Okay.  Is that lot on the north or southern side of the
7  fence?
8  A    North side already.
9  Q    And you indicated that there was video surveillance,
10 correct?
11 A    The camera operator, yes.
12 Q    Camera operator.  Did they record what they saw of
13 Mr. Vigil?
14 A    I don't know, sir.
15 Q    Do they have that capability?
16 A    I don't know.
17 Q    So there were no National Guardsmen?
18 A    No.
19 Q    And no military?
20 A    Not in, again, the report.
21 Q    Okay.  So the report had nothing in there about that,
22 correct?
23 A    Correct.
24 Q    All right.  And did you interview Agent Davalos
25 yourself?

```
 1   A    No, I didn't.
 2   Q    So did you interview the processing agent?
 3   A    No.
 4   Q    You reviewed the I-213?
 5   A    Yes.
 6   Q    And that document was prepared by the encountering and
 7   the processing agent?
 8   A    Yes.
 9   Q    Anybody else contribute to the I-213?
10   A    No.
11   Q    Now you indicated that Mr. Vigil was questioned by
12   agents, correct?
13   A    Yes.
14   Q    What did they ask him?
15   A    When -- during his initial encounter, they questioned
16   him as to his citizenship and if he had any legal documents
17   to be or remain in the U.S.
18   Q    And did they ask him questions besides those questions?
19   A    Back at the -- back during processing nor during his
20   processing, he -- questions were further asked on -- after he
21   was mirandized on the 214, and he agreed to answer questions
22   and he did -- or he pretty much said the same thing that he
23   was a citizen of Honduras, as well.
24   Q    Other than his biographical information, did they ask
25   him additional questions?
```

```
 1  A     If he was removed from the U.S. and the Defendant did
 2  acknowledge that he was.
 3  Q     Did they provide him with any types of forms or notices?
 4  A     In regards to what, sir?
 5  Q     Anything.
 6  A     Besides 214, Notice of Rights.
 7  Q     Any other forms?
 8  A     Not to my knowledge.
 9  Q     You indicated that the immigration document that would
10  show, prove up the removal of Mr. Vigil, you've never been
11  able to see, correct?
12  A     Correct.
13  Q     You just did a records check.  Is that right?
14  A     Yes.
15  Q     And in the records check, were you ever just able to see
16  an entry that had a photograph, signature, date of execution
17  related to the removal?
18  A     No, not yet.
19  Q     This is a Second Amended Complaint, correct?
20  A     Yes, correct.
21  Q     Because there haven't -- there was an error with the
22  date?
23  A     Yes.
24  Q     So there could also be an error in the records you
25  looked at, as well, correct?
```

1   MR. ORTEGA:  I'm going to object, Your Honor.  It
2 calls for speculation.
3   THE COURT:  Overruled.  There can be an error.
4   THE WITNESS:  To my knowledge --
5   MR. ORTEGA:  (Indiscernible).
6   THE WITNESS:  To my knowledge, I don't know.
7 BY MR. HANSHEW:
8 Q   To your knowledge, I'm sorry?
9 A   I don't know.  There will be an error to the record
10 checks.
11   MR. HANSHEW:  No further questions, Judge.
12   THE COURT:  All right, thank you.
13   Anything else?
14   MR. ORTEGA:  No, Your Honor.
15   THE COURT:  Any evidence or argument, Mr. Hanshew?
16   MR. HANSHEW:  No, Judge.  Just in terms of probable
17 cause that --
18   THE COURT:  All right.
19   MR. HANSHEW:  -- there was no 296s reviewed.
20 That's the document.  It was just done with a records check.
21 This case we saw already that documents prepared by
22 individuals can be in error, just as much as they could be in
23 the records that he looked at, Judge.
24   THE COURT:  Response?
25   MR. ORTEGA:  Your Honor, this is a probable cause

1  hearing.  We maintain that he has provided sufficient facts
2  to establish probable cause that this gentleman did reenter
3  the country illegally.
4              THE COURT:  All right.  I'll find probable cause,
5  grant the Government's Motion To Detain, remind the
6  Government of Brady.  Anything else?
7              MR. ORTEGA:  Nothing, Your Honor.
8              THE COURT:  Anything else, Mr. Hanshew?
9              MR. HANSHEW:  No, Judge.
10             THE COURT:  All right.  We'll be in recess.
11             COURTROOM DEPUTY:  All rise.
12        (Whereupon, at 10:12 a.m., the proceedings were
13 adjourned.)
14                          * * * * *
15                     C E R T I F I C A T I O N
16             I, DIPTI PATEL, court-approved transcriber, certify
17 that the foregoing is a correct transcript from the official
18 electronic sound recording of the proceedings in the above-
19 entitled matter, and to the best of my ability.
20
21  [signature]
22  _____
23 DIPTI PATEL, AAERT CET-997
24 Expires: December 6, 2026
25 LIBERTY TRANSCRIPTS              DATE:  June 26, 2025